Charles ADAMS; Josephine Sotro; Daniel Abelein; Susan Abelein; William E. Allen; Lars Andres; Gurbaksh Singh; Henry Andrew; Gurmit Singh; Karla Andrew; Joe Sotro, Sr.; Robert Andrews; Joe Sotro, Jr; Carol Andrews; Cynthia Sotro; Curt D.

Barnes; Roy Barnes; Richard Steele; Antoinette Barnes; Wanda Steele; Wilbur Steen; Ernest Bartak; Laura Steen; Ann Bartak; James Stroud; Clarence Beardsley; Mary Stroud; Janice Beardsley; Jerry Bergamyer; Silas Suits; Nadine Bergamyer; Bette Suits; Robert Bergevin; Catherine Tharin; Grace Bergevin; Larry Thompson; Donald Berry; Judy Thompson; Robert Tulp; Claudette Tulp; Gary Blackburn; Daniel Vash; Margaret Blackburn; Eugene Botkins; Carla Vash; Dale Warner; Gordon Bradberry; Margaret Warner; Linda Bradberry; Richard Wenborne; David Britton; Noreen Wenborne; Judy Britton; Mike Williams; Kenneth Brown; Sheryl Williams; Elizabeth Brown; Gene R. Wolford; Kenneth Buehner; Dan Wyatt; John Bufis; Darlene Wyatt; Penny Bufis; Bruce Bulger; Dorene Bulger; Charles Byrd; Jackie Byrd; Robert Capehart; Ingrid Capehart; Roger Carter; Lora Carter; Roger Catlow; Mary Catlow; Boyd Chisholm; Anita Chisholm; Donald Clayton; Yvonne Clayton; Richard Collan; Jacob Conner; Barbara Conner; Scott J. Conner; Tom Costello; Mary Costello; Michael Dale; Ellen Dale; Thomas Emerson; Lydia Emerson; Helen Foy; Marvin Franklin; Barbara Franklin; Gordon Freeman; Ilene Freeman; Joseph Gilmore; Alan Gott; Linda Gott; James K. Hall; Gary Hamm; Mary Hamm; James Harper; Gilbert Hay, III; Kenneth

---

**1180**

Herman; David Higdon; Sena Higdon; Keith Hodnett; William Holzendorf; Barbara Holzendorf; Brent Hubbard; Dorinda Hubbard; John Ittner; Eleanor Ittner; Robert Jenkins; Eyonne Jenkins; Bobbie Johnson; Martha Johnson; Timothy Kaczocha; Kim Holmes; Michael Keller; Jin Keller; Neal Kempt; Karen Kemp; James Lindley; Ann Lindely; Travis Lindley; Barbara Lindley; Marcus Lowe; Susan Lowe; Dan Lynch; Florence Lynch; Alfred Malinowski; Walter Marlatt; Audrey Marlatt; Glenn Matherne; Merril Matherne; Gary Mcdonough; Edwin Mcgifford; Verna Mcgifford; Thomas Mcintyre; Deborah Mcintyre; Fred Mcnatt; Patricia Mcnatt; Gerald Mcneely; Deborah Mcneely; John Mekulsia; Roger Meier; Karren Meier; James Moffett; Frances Moffett; John B. Moody; Glenn Mortensen; Helen Nash; Curt Nelson; Lawrence Noble; Mary Noble; Gary Parker; Larry Pauly; Dale Pemberton; Irene Pemberton; Mike Ponder; Debbie Ponder; Larry Potts; Shirley Potts; Daniel Quinones; A. Don Ray; Bernice Ray; Jay Schndieder; Leon Shepard; Mary Shepard; Ron Shiplet; Louetta Shiplet; Judith Parker, Plaintiffs–Appellants,

v.

Norman S. JOHNSON; Brad Lyle; William Mcdevitt; John Meek; Daniel Mulhall; David Osgrod; Jill Page; Wes Pohl; Harry Potter; Deborah Richie; Robert Spooner; Lavonne Tobia; Marilyn Ulbright; Candice Mack; Larry Lindelof; Thomas Ballard; Teresa Castro, Deceased on 10/3/01; Chris Coones; Colleen Haddigan; John Hall; Thomas Healy; Walter J. Hoyt, III; Sue Hullen; Blake Johnson, Defendants–Appellees.

No. 02–35509.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 2003.

Filed Jan. 22, 2004.

Wendy S. Pearson, Pearson Merriam, P.C., Seattle, WA, for the plaintiffs-appellants.

Anthony T. Sheehan, United States Department of Justice, Tax Division, Washington, DC, for the defendants-appellees.

Before ALDISERT,* GRABER, and GOULD, Circuit Judges.

GOULD, Circuit Judge:

Partners in cattle partnerships organized and managed by breeder Walter J. Hoyt, III (the "Hoyt partnerships") brought suit against Hoyt and more than twenty Internal Revenue Service ("IRS") agents (the "federal defendants") in the United States District Court for the District of Oregon asserting claims for money damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiffs alleged that the IRS's audits of the partnerships and the IRS's assessment and collection of partnership taxes violated plaintiffs' rights to procedural due process, substantive due process, and conflict-free representation under the Fifth Amendment, and access to the courts under the First Amendment.

The federal defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief could be granted. The district court granted this motion, concluding that the federal defendants were entitled to qualified immunity, because of the district court's view that the facts alleged in the complaint did not show any violation of a constitutional right. The district court entered judgment for the federal defendants. This appeal followed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's judgment. We hold that *Bivens* relief is unavailable for challenges to IRS partnership tax assessment and collection activities.

**I**[1]

Hoyt was a well-known sheep and cattle breeder in Burns, Oregon. Between 1971 and 1996, Hoyt organized and sold to investors partnership interests in hundreds of investment partnerships that owned and raised livestock that Hoyt bred. Each partner was expected to benefit from the partnership in two ways. First, Hoyt assigned each partner part of his cattle operation's expenses, which the partners were able to claim as a tax deduction, lowering

---

* The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. Because the plaintiffs' claims were dismissed on a motion to dismiss pursuant to Rule 12(b)(6), this factual section recites the facts as pleaded by plaintiffs, which we accept as true for purposes of assessing the dismissal. *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir.1998).

their tax liability on income from other sources. Second, in later years the partnerships were expected to produce a profit as each partnership liquidated the livestock that it had been assigned.

Hoyt was accredited by the IRS as an enrolled agent, thereby permitting Hoyt to prepare federal income tax returns for the partnerships and to represent the partners in dealings with the IRS. Hoyt was also the tax matters partner ("TMP") for each of the partnerships. *See* 26 U.S.C. § 6231(a)(7). Under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, §§ 402–406, 96 Stat. 324, a TMP is charged with representing a partnership in all dealings with the IRS, including the filing of the partnership's tax returns, and a TMP in some matters can bind other partners to agreements and settlements negotiated with the IRS. *See* 26 U.S.C. § 6224(c); T.C. Rule 248. Hoyt's partners also executed powers of attorney empowering Hoyt to act on their behalf on partnership matters.

In the late 1970's, the IRS began the first of a series of audits of the Hoyt partnerships. These audits continued through the 1980's and 1990's, spanning 24 distinct tax years. The IRS audits concluded that all the cattle partnerships were shams that were overvalued, that failed to substantiate tax items, and that lacked economic viability and profit motive. In early 1984, the IRS Criminal Investigation Division began investigating Hoyt's tax reporting on these partnerships. This investigation lasted until August 12, 1987, when the Department of Justice declined to prosecute Hoyt. A second IRS criminal investigation of Hoyt commenced in 1989, but also ended without prosecution. The plaintiffs, now appellants, alleged in their complaint that Hoyt believed that he was under investigation for the duration of the partnership audit process, because he was never notified that the criminal investigations into his practices had ended. In 1999, as the complaint alleged, Hoyt was indicted for bankruptcy fraud, mail fraud, and money laundering, crimes for which he was later convicted. However, Hoyt was never indicted for tax crimes investigated by the IRS.

Plaintiffs alleged that the IRS, until 1995, allowed the tax refunds claimed by Hoyt on behalf of the Hoyt partnerships, in order to encourage more investment in these partnerships.

The plaintiffs alleged that this process resulted in more audits and corresponding tax adjustments of the partnership investors which, combined with late-payment penalties and interest on the adjusted tax due from the audits, exceeded the tax that would have been due from plaintiffs in the absence of their participation in the Hoyt partnerships. Many of the Hoyt partnership investors subsequently filed for bankruptcy. Stated another way, plaintiffs alleged a theory that the IRS, by an initial conspiratorial auditing of the Hoyt partnerships, let plaintiffs as partnership investors be drawn into taking tax deductions from the partnerships that were later determined by the IRS on audit to be improper, yielding not only liability on the taxes that should have been due, but also interest and penalties.

Plaintiffs alleged that the IRS achieved success in these cattle partnership audits by exploiting Hoyt's conflict of interest in serving as TMP for the Hoyt partnerships while he was the subject of an IRS criminal investigation. Plaintiffs further alleged that, despite Hoyt's conflict, the federal defendants took no action to remove Hoyt as TMP, nor did they act to enjoin Hoyt's continued promotion of the partnerships or inform plaintiffs that Hoyt was engaging in tax fraud. Thus plaintiffs contended that the federal defendants used

the threat of their criminal investigation of Hoyt to gain concessions from Hoyt that facilitated the IRS's civil audits of the Hoyt partnerships, to plaintiffs' detriment.

Plaintiffs also alleged that, in exploiting Hoyt's conflict of interest, the federal defendants conspired with Hoyt to audit and process tax claims against the Hoyt partnerships. Plaintiffs alleged that the federal defendants knew that it was against Hoyt's personal interest to resolve tax claims so as to eliminate the need for future audits and that Hoyt sought settlements that would protect him from tax penalties, allow him to continue promoting the Hoyt partnerships, and permit him to retain his status as an enrolled agent. Plaintiffs further alleged that Hoyt protected his personal interest by conceding tax issues and agreeing to extend the statute of limitations for the partnership audits. These were positions that plaintiffs alleged would not have been taken by a non-conflicted TMP. Plaintiffs' theory was that the federal defendants were aware that Hoyt was withholding information from and making misrepresentations to his Hoyt partnership partners. The complaint urged that despite this knowledge, the federal defendants concealed from plaintiffs the IRS's criminal investigation of Hoyt and the IRS's tax settlement negotiations with Hoyt.

Because the district court granted a motion to dismiss, our task is to evaluate whether the claims alleged can be asserted as a matter of law, and we turn to that task.

## II

### A

We review de novo this Rule 12(b)(6) dismissal of a *Bivens* action. *Bothke v. Fluor Eng'rs & Constructors, Inc.*, 834 F.2d 804, 809 (9th Cir.1987). All allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001), but conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss, *id.* Dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims. *Id.* We may affirm a 12(b)(6) dismissal on any basis fairly supported by the record. *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir.2000).

### B

In *Bivens*, the United States Supreme Court held that, in appropriate cases, government officials may be held personally liable for violations, committed under the color of government authority, of citizens' constitutional rights. 403 U.S. at 396–97, 91 S.Ct. 1999. *Bivens* gives an individual a federal common law basis to sue federal government actors if they violate the individual's constitutional rights. However, our precedent makes clear that the right to sue as established by *Bivens* is qualified and is not absolute. We have held explicitly that *"Bivens* remedies are not available to compensate plaintiffs for all constitutional torts committed by federal officials." *W. Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir.2000) (per curiam). This rule is consistent with the Supreme Court's caution in *Bivens* that an action against governmental officials will not lie where there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396, 91 S.Ct. 1999.

This case falls within a well-established situation in which the Supreme Court has refused to recognize a *Bivens* remedy. The Supreme Court has instructed us that a *Bivens* action does not lie where a comprehensive federal program, with extensive statutory remedies for any

federal wrongs, shows that Congress considered the types of wrongs that could be committed in the program's administration and provided meaningful statutory remedies. *See Schweiker v. Chilicky*, 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) ("When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies."); *Bush v. Lucas*, 462 U.S. 367, 368, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (refusing to create a *Bivens* remedy for a federal employee's allegations of constitutional violations because the employment relationship was "governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States"). We have recognized this limit imposed by the Supreme Court in *Chilicky*. *See Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir.1989) ("Where Congress has designed a program that provides what it considers adequate remedial mechanisms for constitutional violations, *Bivens* actions should not be implied."); *see also Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir.2003); *Cederquist*, 235 F.3d at 1156. We have applied *Chilicky* broadly, holding in another case that, "where Congress has provided *some* mechanism for relief, *Bivens* claims are precluded." *Berry v. Hollander*, 925 F.2d 311, 313 (9th Cir.1991). For reasons explained below, the Supreme Court's holding in *Chilicky* and our holdings in *Kotarski* and *Berry* are dispositive and give reason to affirm the district court's dismissal of this action. Because of the importance of this issue to those who might challenge the constitutionality of actions by federal tax officials, we elaborate our reasoning.

## III

### A

■ We have not heretofore squarely decided the question whether a *Bivens* remedy is available for alleged constitutional violations by government officials in the assessment and collection of taxes. *See Shwarz v. United States*, 234 F.3d 428, 434 & n. 5 (9th Cir.2000) (stating that we have addressed the issue in dictum). We now reach this question, assessing both the pertinent decisions of our sister circuits and the particular provisions of TEFRA that are relevant to our evaluation of plaintiffs' potential remedies other than a *Bivens* action.

### B

Relying on the comprehensiveness of the Internal Revenue Code, and the many explicit remedial provisions that the Code contains, our sister circuits that have addressed the question are nearly unanimous in holding that *Bivens* relief is not available for alleged constitutional violations by IRS officials involved in the process of assessing and collecting taxes, claims similar to those raised by plaintiffs here. The First, Third, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits have all held *Bivens* actions inapplicable for claims arising from federal tax assessment or collection. *See, e.g., Shreiber v. Mastrogiovanni*, 214 F.3d 148, 152 (3d Cir.2000) ("[A] *Bivens* action should not be inferred to permit suits against IRS agents accused of violating a taxpayer's constitutional rights in the course of making a tax assessment."); [2]

---

2. In reviewing the scope of the Internal Revenue Code, the *Shreiber* court further recognized the important balance that Congress struck in the Code between taxpayer rights and the need for an efficient system of taxation. "Congress chose to provide certain remedies, and not others, as part of the complex statutory scheme which regulates the relationship between the IRS and taxpayers." 214 F.3d at 152–53. The Third Circuit concluded that "Congress's efforts to govern the relationship between the taxpayer and the

*Dahn v. United States,* 127 F.3d 1249, 1254 (10th Cir.1997) ("[I]n light of the comprehensive administrative scheme created by Congress to resolve tax-related disputes, individual agents of the IRS are also not subject to *Bivens* actions."); *Fishburn v. Brown,* 125 F.3d 979, 982–83 (6th Cir.1997) (summarizing extra-circuit case law and concluding that *Bivens* actions may not be brought against IRS agents for due process violations arising out of tax collection activities); *Vennes v. An Unknown Number of Unidentified Agents of the United States,* 26 F.3d 1448, 1453–54 (8th Cir. 1994) ("Congress has provided specific and meaningful remedies for taxpayers who challenge overzealous tax assessment and collection activities.... These carefully crafted legislative remedies confirm that, in the politically sensitive realm of taxation, Congress's refusal to permit unrestricted damage actions by taxpayers has not been inadvertent."); *McMillen v. United States Dep't of Treasury,* 960 F.2d 187, 190 (1st Cir.1991) (per curiam) (stating that even if alleged IRS assessment and collection actions did constitute a constitutional violation, "we doubt that the creation of a *Bivens* remedy would be an appropriate response");[3] *Baddour, Inc. v. United States,* 802 F.2d 801, 807–09 (5th Cir.1986) ("[C]reation of a damages remedy under circumstances where Congress has provided for corrections of tax collection errors could wreck havoc with the

federal tax system."); *Cameron v. IRS,* 773 F.2d 126, 129 (7th Cir.1985) ("[I]t would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against Treasury employees."). We view these decisions as persuasive.[4]

Even if we were to view this issue as if writing on a blank slate with no helpful precedent to consider, we would reach the same conclusion rejecting a *Bivens* remedy for challenges to IRS officials' actions in tax assessment and collection. *Chilicky* and *Kotarski* hold that courts should not create a *Bivens* remedy where the complexity of a federal program, including a comprehensive remedial scheme, shows that Congress has considered the universe of harms that could be committed in the program's administration and has provided what Congress believes to be adequate remedies. *See Chilicky,* 487 U.S. at 422–23, 429, 108 S.Ct. 2460; *Kotarski,* 866 F.2d at 312. There are few statutory schemes more complex, comprehensive, or subject to greater congressional scrutiny than the Internal Revenue Code, a principle well known to any who have ever prepared their own tax return. *See Shwarz,* 234 F.3d at 434; *see also Judicial Watch, Inc. v. Rossotti,* 317 F.3d 401, 410 (4th Cir.) ("It would be difficult to conceive of a more comprehensive statutory scheme, or one

---

taxman indicate that Congress has provided what it considers to be adequate remedial mechanisms for wrongs that may occur in the course of this relationship." *Id.* at 155.

**3.** *McMillen* also stressed that *Chilicky* requires only that the remedies available to an aggrieved party be meaningful and adequate; the remedies need not be perfectly comprehensive. "The remedies Congress has created may not be perfectly comprehensive, but they do supply 'meaningful safeguards or remedies for the rights of persons situated' as [appellants] were." 960 F.2d at 190–91 (quoting *Chilicky,* 487 U.S. at 425, 108 S.Ct. 2460).

*McMillen* concluded that, "[i]n such cases, the courts have declined to create new *Bivens* remedies." *Id.* at 191.

**4.** The conclusions of these courts are also consistent with our prior expressions of views, even if dicta, in cases that we have decided. *See, e.g., Shwarz,* 234 F.3d at 434 (citing the holdings in *Fishburn, Vennes,* and *McMillen* and stating that "[w]e also have agreed with this view, albeit in dictum"); *Wages v. IRS,* 915 F.2d 1230, 1235 (9th Cir. 1990) (stating that "we have never recognized a constitutional violation arising from the collection of taxes").

that has received more intense scrutiny from Congress, than the Internal Revenue Code."), *cert. denied*, —— U.S. ——, 124 S.Ct. 179, 157 L.Ed.2d 47 (2003). In the many and varied provisions of the Internal Revenue Code, "Congress has given taxpayers all sorts of rights against an overzealous officialdom." *Cameron*, 773 F.2d at 129. Moreover, the breadth of the Internal Revenue Code's remedial scheme demonstrates persuasively that Congress did consider the wrongs that could be committed in the Code's administration, and struck a balance between the desire for taxpayer protection and the need for efficient tax administration. *See Chilicky*, 487 U.S. at 429, 108 S.Ct. 2460 ("Congress is the body charged with making the inevitable compromises required in the design of a massive and complex [federal] program."); *Kotarski*, 866 F.2d at 312 ("So long as Congress' failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment. . . ."). We consider the adequacy of the Internal Revenue Code's remedies as a whole. *See Chilicky*, 487 U.S. at 424–29, 108 S.Ct. 2460; *Berry*, 925 F.2d at 314. Because the Internal Revenue Code gives taxpayers meaningful protections against government transgressions in tax assessment and collection, we hold that *Bivens* relief is unavailable for plaintiffs' suit against IRS auditors and officials.

## C

Plaintiffs attempt to distinguish the extra-circuit case law contrary to their position by maintaining that the rights granted to partners under TEFRA and TEFRA's remedial processes are different than those under the rest of the Internal Revenue Code. Plaintiffs' argument centers on TEFRA and the limitations they claim TEFRA places on partners' ability to protect their individual interests and to pursue remedies under the Internal Revenue Code. Plaintiffs urge that, outside of TEFRA, individual taxpayers have the Internal Revenue Code's deficiency, 26 U.S.C. §§ 6211–6216, and refund, *id.* § 7426, procedures, but that these remedies are unavailable to plaintiffs under TEFRA. Plaintiffs stress TEFRA's reliance on the role of a partnership's TMP as the fiduciary representative of a partnership. Plaintiffs argue that TEFRA contemplates a TMP as the liaison between a partnership and the IRS, and that with a conflicted TMP like Hoyt, TEFRA's rights and remedies do not adequately protect the interests of other partners.

We cannot discern any federal cases in any jurisdiction that have squarely addressed the specific question whether *Bivens* actions are precluded under TEFRA, notwithstanding the general current of law precluding *Bivens* actions challenging government implementation of the Internal Revenue Code. However, our scrutiny of TEFRA reveals that TEFRA, like other parts of the Internal Revenue Code, establishes a comprehensive scheme that streamlines the assessment and collection of partnership taxes, and ensures that individual partners retain meaningful opportunities to participate in partnership audits and litigation. Further, TEFRA's remedial provisions do not supersede many other remedies available to taxpayers under the Internal Revenue Code.

Before 1982, adjustments to the tax liability of partners were performed at the individual partner level. This procedure imposed an administrative burden on the IRS, led to duplicative audits and litigation, and created the risk of inconsistent treatment of different partners in the same partnership. *See generally* H.R. Conf. Rep. No. 97–760, at 599–600 (1982), *reprinted in* 1982-2 C.B. 600, 662–63. Given these concerns, Congress in 1982 enacted TEFRA, which created a unified procedure for determining partnership tax

items, including audits, at the partnership level. *Id.*

TEFRA requires that each partnership designate a general partner as the partnership's TMP. 26 U.S.C. § 6231(a)(7). Although the TMP has primary responsibility for handling the partnership's relationship with the IRS, TEFRA has notice provisions intended to protect the rights of all partners. For partnerships with 100 or fewer partners, TEFRA requires that the IRS mail to each partner a notice of the beginning of a partnership audit, and a Notice of Final Partnership Administrative Adjustment, explaining the reasons for any adjustments or determinations made by the IRS, resulting from the audit. *Id.* § 6223(a). For partnerships with more than 100 partners, the IRS must mail these notices to all partners with at least a one-percent interest in the partnership, as well as to any "notice groups" of partners with aggregate partnership interests greater than five percent. *Id.* § 6223(b). Regardless of the size of the partnership, "[a]ny partner has the right to participate in any administrative proceeding relating to the determination of partnership items at the partnership level," *id.* § 6224(a), and any partner may elect to participate in any proceeding relating to or arising out of a partnership audit, *id.* § 6226(c).

TEFRA also contains protections against the action or inaction of a conflicted TMP. If a TMP fails to bring an action to contest a Notice of Final Partnership Administrative Adjustment, any partner entitled to personal notice may file suit in lieu of the TMP. *Id.* § 6226(b). Regardless whether suit is filed by the TMP or by another partner, any individual partner with an interest in the proceedings may elect to participate, *id.* § 6226(c)-(d), and any partner may intervene as of right in

TEFRA proceedings in the United States Tax Court, T.C. Rule 245. TEFRA further permits individual partners independently to settle their tax liabilities with the IRS, 26 U.S.C. § 6224(c), entitles later-settling partners to gain settlement terms consistent with those achieved by partners who have already settled, *id.*, and excludes partners entitled to notice and partners properly objecting to the TMP's authority from tax settlements entered into by the TMP, *id.*

Additionally, TEFRA does not preempt many of the protections afforded to all taxpayers under other sections of the Internal Revenue Code. Section 7433, importantly, permits taxpayers to recover damages from the government for intentional, reckless, or negligent disregard of the Internal Revenue Code or Treasury Regulations in connection with the collection of any tax. *Id.* § 7433. Section 7430 further permits taxpayers to recover damages for audit positions taken by the IRS when those positions are not "substantially justified." *Id.* § 7430. These remedies remain available in the TEFRA context and were available to the partners in the Hoyt partnerships.

TEFRA and the general provisions of the Internal Revenue Code, if properly invoked by plaintiffs, gave plaintiffs comprehensive and meaningful remedies for the harms they alleged that they suffered as a result of the federal defendants' assessment and collection actions. We disagree with plaintiffs' contention that a complete remedy was precluded by the statutory scheme.[5] But even if the statutory remedies, individually and collectively, did not potentially afford "complete relief" to plaintiffs in some sense, precedent requires only that Congress has considered the universe of harms that could be com-

---

**5.** Plaintiffs did not pursue all remedies potentially available under TEFRA and the general

Internal Revenue Code provisions.

mitted under TEFRA and has made available rights and remedies that are meaningful and adequate. *See Chilicky,* 487 U.S. at 421–23, 108 S.Ct. 2460; *Libas,* 329 F.3d at 1130; *Berry,* 925 F.2d at 314. We have no doubt that the remedies under TEFRA and the general provisions of the Internal Revenue Code are adequate to provide a just remedy for any impropriety of government officials that may occur in partnership audits and tax collection. Plaintiffs have not shown that the remedies Congress created in the comprehensive Internal Revenue Code are inadequate or meaningless. To the contrary, we view a *Bivens* remedy as not only superfluous here, but also as a potential impediment to the orderly assessment and collection of taxes. Our review of TEFRA and the general provisions of the Internal Revenue Code leads us to conclude that Congress carefully weighed the harms that could be suffered by taxpayers against the need for an efficient system of partnership taxation, and then gave partners meaningful and adequate remedies for any wrongdoing by auditors in the assessment and collection of partnership taxes.

**D**

Considering the decisions of our sister circuits, the comprehensiveness of the Internal Revenue Code and its remedial provisions for the benefit of taxpayers, and the specific remedies available to a partner challenging audits pursuant to TEFRA, we hold that the taxpayer plaintiffs here have no right to *Bivens* relief for any allegedly

unconstitutional actions of IRS officials engaged in tax assessment and collection. Stated another way, plaintiffs may not pursue a *Bivens* action with complaints about the IRS's audits, assessments, and collection of partnership taxes and the obligations of partners.[6]

**AFFIRMED.**

---

**6.** Because of our conclusion that a *Bivens* action is unavailable as a vehicle for the assertion of the alleged constitutional violations by the IRS auditors, we need not and do not address the substance of each asserted claim of constitutional violation. Moreover, in rejecting a *Bivens* action in this setting, we do not suggest that a taxpayer may not, in an appropriate case, challenge the constitutionality of any provision of the Internal Revenue

Code by seeking declaratory relief, an issue that is not before us. *See, e.g., South Carolina v. Regan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984) (granting appellant leave to file suit alleging portions of TEFRA to be unconstitutional); *Edwards v. Comm'r,* 680 F.2d 1268, 1270 (9th Cir.1982) (per curiam) (summarizing previous taxpayer challenges to the constitutionality of the Internal Revenue Code).