# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 8, 2016        Decided February 21, 2017

No. 15-7118

JOHN J. BOWMAN, JR.,
APPELLANT

v.

KIMBERLY IDDON, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00520)

---

*Jennifer J. Clark*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With her on the briefs was *Jeffrey T. Green*.

*John J. Bowman Jr.*, pro se, was on the brief for appellant.

*Jonathan S. Cohen*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Gilbert S. Rothenberg* and *Gretchen M. Wolfinger*, Attorneys.

Before: TATEL and WILKINS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Concurring opinion filed by *Circuit Judge* TATEL, with whom *Senior Circuit Judge* GINSBURG joins.

TATEL, *Circuit Judge*: Appellant John Bowman alleges that five Internal Revenue Service (IRS) employees barred him from representing taxpayers before the Service without due process in violation of the Fifth Amendment. He seeks damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The district court dismissed the case, concluding that the Internal Revenue Code's remedial scheme for tax practitioners foreclosed a *Bivens* action. Without reaching that issue, we affirm on the alternative ground that Bowman has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) because his complaint contains no allegation that Defendants deprived him of a constitutionally protected interest.

## I.

The Internal Revenue Service recognizes four primary groups of individuals who prepare tax returns: certified public accountants (CPAs), lawyers, enrolled agents, and unenrolled preparers ("tax preparers"). *See* 31 C.F.R. § 10.8(a); *American Institute of Certified Public Accountants v. IRS*, 804 F.3d 1193, 1194–95 (D.C. Cir. 2015). CPAs, lawyers, and enrolled agents must be licensed, while tax preparers are "subject to less stringent regulation." *American Institute*, 804 F.3d at 1195. This case concerns a tax preparer.

As of 2005, IRS regulations permitted the first three of these groups—all but tax preparers—to "practice before the

IRS." *See* 31 C.F.R. §§ 10.2(d)–(e), 10.3(a)–(c) (2005). The regulation then governing practice before the IRS, Circular 230, defined these groups as "practitioners" and permitted them to act in "all matters connected with a presentation to the [IRS] or any of its officers or employees relating to a taxpayer's rights, privileges, or liabilities," including through "filing documents," "corresponding . . . with the IRS," and "representing a client at conferences." *Id.* §§ 10.2(d)–(e), 10.3. Tax preparers, by contrast, could obtain only "limited practice" authorization, which allowed them to represent taxpayers before certain line officers of the IRS, excluding "appeals officers, revenue officers, Counsel or similar officers or employees." *Id.* § 10.7(c)(1)(viii).

In 2011, "after an IRS review found problems in the tax-preparation industry," the Service issued a new rule governing tax preparers. *Loving v. IRS*, 742 F.3d 1013, 1015 (D.C. Cir. 2013) (citing Regulations Governing Practice Before the Internal Revenue Service, 76 Fed. Reg. 32,286 (June 3, 2011)). That rule created a new category of "registered tax preparers," who counted as "practitioners" obligated to "register with the IRS by paying a fee and passing a qualifying exam." *Id.*; *see* 31 C.F.R. §§ 10.2(a)(5), 10.3(f), 10.4(c), 10.5(b) (2011). Under the rule, and except as otherwise prescribed, only attorneys, CPAs, enrolled agents, and registered tax preparers could "for compensation prepare[] or assist[] with the preparation of all or substantially all of a tax return or claim for refund." 76 Fed. Reg. at 32,291; *see* 31 C.F.R. § 10.8(a) (2011); *see also* 26 C.F.R. § 301.7701-15 (2009) ("A tax return preparer is any person who prepares for compensation, or who employs one or more persons to prepare for compensation, all or a substantial portion of any return of tax or any claim to refund of tax under the Internal Revenue Code."). This court invalidated these regulations in *Loving v. IRS*, holding that tax-return

preparers fall outside the IRS's statutory authority to regulate "'the practice of representatives of persons before the Department of the Treasury.'" 742 F.3d at 1015 (quoting 31 U.S.C. § 330(a)(1)).

Enter appellant John Bowman. While working as a tax preparer in June 2005, he pleaded guilty to mail fraud, wire fraud, and money laundering, and was sentenced to fifty-seven months' incarceration. He began serving his sentence in August 2005.

Three months later, while Bowman was still in prison, Defendant Kimberly Iddon, an IRS Revenue Agent, submitted a report of Bowman's suspected misconduct to the IRS Office of Professional Responsibility (OPR). The form on which Iddon submitted the report required her to identify whether Bowman was an attorney, CPA, enrolled agent, or enrolled actuary. Though Bowman had never been an enrolled agent, Iddon erroneously identified him as one, citing "personal knowledge" and attaching newspaper articles on Bowman's prosecution. Bowman Mot. for Summ. J. at 21. None of those articles, however, identify Bowman as an enrolled agent, and Iddon never searched the IRS's records to confirm Bowman's status.

A few weeks later, Iddon faxed Bowman's IRS Centralized Authorization File to an OPR paralegal. Although the space on the form for "Enrollment Number" is empty, someone handwrote the words "Enrolled Agent" at the bottom of the page. Bowman Mot. for Summ. J. at 35. An IRS official who has since searched the agency's records reports that she "did not find any record indicating that [Bowman] was authorized to practice before the IRS as an enrolled agent." Rogers Decl. at 1.

OPR nonetheless initiated disciplinary proceedings to suspend Bowman from doing what, as a tax preparer, he had no authority to do: practice before the IRS. Due to a second mistake by the IRS, Bowman received neither the complaint that initiated those proceedings nor an opportunity to correct the agency's obvious error. Specifically, the Service mailed a copy of the complaint to his business address, even though the IRS knew Bowman was incarcerated and had forfeited his business property to the government as restitution. Unsurprisingly, the letter was returned undelivered.

A month later, OPR issued a "decision by default" suspending Bowman. Decision – Complaint No. XP-2006-067 at 1. That decision reads:

> Effective this date, you are suspended from eligibility to practice before the Internal Revenue Service. Your suspension prohibits you from engaging in practice before the Internal Revenue Service as that term is defined in section 10.2(d) of Circular 230.

Repeating its earlier mistake, OPR sent the letter to Bowman's former business address even though, as the IRS well knew, Bowman remained incarcerated and the previous letter had been returned undelivered.

The IRS then announced Bowman's suspension in its quarterly bulletin, as well as on a website listing disciplinary actions for "Attorneys, Certified Public Accountants, Enrolled Agents, and Enrolled Actuaries." *See* Internal Revenue Bulletin, 2006-18 I.R.B. 855, 869 (May 1, 2006). Defendant Karen Copeland, an OPR manager, emailed more than twenty people informing them that Bowman "ha[d] been suspended from practice before the [IRS]" and "should not be recognized

as a taxpayer's representative." Bowman Mot. for Summ. J. at 49–50. She provided the information for "dissemination throughout your organization as you deem appropriate." *Id.* at 49.

Having left prison, and having received no correspondence from the IRS, Bowman learned of OPR's disciplinary decision through a Freedom of Information Act request in September 2011. By this time, the IRS had promulgated the 2011 rule extending Circular 230 to tax preparers. So on November 30, 2012, Bowman filed a petition for reinstatement with OPR pursuant to Circular 230.

Two years later, after this court's *Loving* decision invalidated the 2011 rule, the IRS responded to Bowman's petition. Now recognizing that Bowman was not and had never been an enrolled agent, OPR sent him a letter dated November 3, 2014, informing him that "[a]ccording to the [IRS's] Enrolled Agent database, you are not an Enrolled Agent." Bowman Mot. for Summ. J. at 75. OPR went on to warn Bowman that "unless you currently possess a license under section 10.3 of Circular 230, you may not engage in full practice before the Internal Revenue Service . . . ." *Id.* But OPR concluded by restoring Bowman's "ability to engage in limited practice before the IRS, as defined in section 10.7 of Circular 230, by removing [his] name from the list of individuals currently barred from practice before the IRS." *Id.*

In January 2014, Bowman, proceeding pro se, sued Iddon, Copeland, and three other IRS officials. He raised a single *Bivens* claim—that Defendants violated the Fifth Amendment by harming his reputation and business without due process—and sought compensatory damages, punitive damages, and costs. Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6) on a variety

of grounds, including failure to state a claim and qualified immunity.

The district court granted Defendants' motion to dismiss, concluding that Circular 230's comprehensive remedial scheme governing practitioner discipline precluded any *Bivens* remedy, regardless of whether Bowman was an enrolled agent or unenrolled preparer. *Bowman v. Iddon*, 138 F. Supp. 3d 3, 8–9 (D.D.C. 2015). Bowman now appeals. In considering the issues before us, we have been ably assisted by court-appointed amicus.

## II.

Amicus and Defendants focus their dispute on whether a *Bivens* remedy is available here. We have no need to address that question, however, because we affirm for an independent reason, namely that Bowman's complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Defendants raised this argument both in the district court and in their brief here, and amicus responded. *See Jones v. Bernanke*, 557 F.3d 670, 676 (D.C. Cir. 2009) ("[W]e may affirm a judgment on any ground the record supports, and that the opposing party had a fair opportunity to address." (citations and internal quotation marks omitted)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, we "accept[] as true all of the factual allegations contained in the complaint and draw[] all inferences in favor of the nonmoving party." *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014) (citation and internal quotation marks omitted). Because Bowman filed pro se, his complaint "is to be liberally

construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted). We are not, however, limited to the complaint itself: we may consider Bowman's pro se affidavits and exhibits, as well as public records subject to judicial notice. *See Abdelfattah v. U.S. Department of Homeland Security*, 787 F.3d 524, 529 (D.C. Cir. 2015) (drawing on pro se affidavits and exhibits); *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (drawing on "public records subject to judicial notice on a motion to dismiss").

Bowman alleges that Defendants deprived him of the procedural due process guaranteed by the Fifth Amendment. "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). In his complaint, Bowman alleges a serious procedural defect, i.e., that he received neither notice of his suspension nor an opportunity to challenge it.

Bowman's claim fails, however, because he identifies no constitutionally protected interest lost through Defendants' actions. His complaint repeatedly identifies a property interest in his enrolled-agent status and then describes his *Bivens* claim in one sentence: "Because Plaintiff has not received the quantum of process he was due before being suspended indefinitely as an Enrolled Agent [he] has suffered damage to his reputation and business in perpetuity." Compl. at 17. To enjoy a "property interest in a benefit," however, Bowman must have a "legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Yet he has disclaimed any claim of entitlement to enrolled-agent status. As he states in his affidavit, "At no time was I an

Enrolled Agent (Practitioner)." Bowman Aff. at 1. Confirming the accuracy of that statement, the IRS's official response to Bowman's reinstatement petition informed him that he was "not an Enrolled Agent." Bowman Mot. for Summ. J. at 75. Obviously, if Bowman never obtained enrolled-agent status, Defendants could not have deprived him of his interest in that status, however careless their actions.

Amicus argues that "Bowman's claim involves . . . the deprivation of his liberty interests in the ability to engage in his chosen profession as a tax preparer and in his reputation." Amicus Br. 34. Indeed as amicus points out, we have recognized that "when the government formally debars an individual from certain work . . . , there is a cognizable 'deprivation of liberty that triggers the procedural guarantees of the Due Process Clause.'" *Abdelfattah*, 787 F.3d at 538 (quoting *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643–44 (D.C. Cir. 2003)). An individual may also bring a "stigma-plus" claim if the defendant has harmed the plaintiff's reputation and "deprived [the plaintiff] of some benefit to which [the plaintiff has] a legal right." *General Electric Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010).

According to amicus, Bowman satisfies both of these theories of liability because "he has alleged injury to his liberty interest in pursuing his chosen profession as a tax preparer in addition to damage to his reputation." Amicus Reply Br. 16. The argument goes like this: The IRS's 2006 decision suspended Bowman from practice before the Service, and although at that time the suspension only prevented him from working as an enrolled agent, the Service later amended its regulations to permit only practitioners—including registered tax preparers—to prepare taxes. From then until our decision in *Loving*, amicus argues, the suspension barring

Bowman from practicing before the IRS prohibited him from becoming a practitioner and thus from preparing taxes.

Amicus's theory, clever as it is, appears nowhere in the complaint. Not once does Bowman allege that he was prevented from preparing taxes. Instead, he repeatedly refers to himself as an enrolled agent and links his harm to his enrolled-agent status. He alleges that "according to the IRS records" he "was an Enrolled Agent permitted to practice before the Internal Revenue Service." Compl. at 2; *see id.* at 3 (similar). He claims that Defendants publicized the "universal suspension of Plaintiff, John J. Bowman, Jr. Enrolled Agent" by email and in a Bulletin listing "Attorneys, [CPAs], Enrolled Agents, and Enrolled Actuaries." *Id.* at 6–7. Bowman argues that "[a]n enrolled agent (EA) . . . is considered a property interest that triggers Fifth Amendment due process protection," and that he "had a legitimate claim of entitlement" to the "benefits" associated with being an enrolled agent. *Id.* at 12–13; *see Roth*, 408 U.S. at 577 (explaining that, to have a protected property interest in a benefit, an individual must "have a legitimate claim of entitlement to it"). When describing the strength of the private interest at stake in his procedural due process claim, Bowman repeatedly characterizes it as his "property interest" and refers to the IRS sanction as suspension not from tax preparation, but rather from representing "all individuals, businesses, and estates before the IRS." Compl. at 13–14. And, as noted above, Bowman identifies his *Bivens* claim as "being suspended indefinitely as an Enrolled Agent" without due process. *Id.* at 17. Even construing the complaint liberally, as we must, it contains nothing resembling the claim amicus asserts.

Amicus also argues that Bowman was barred from preparing taxes from the moment of his suspension decision

in 2006 because the definition of "practice before the IRS" is capacious enough to include tax preparation. Amicus Br. 36; Oral Arg. Rec. 6:23–7:14. But again, and construing the complaint liberally, we can find no basis for that argument in in the complaint, which lacks any claim that Defendants prevented Bowman from preparing taxes. The argument is also foreclosed by our decision in *Loving*, which explains that "tax-return preparers do not practice *before the IRS* when they simply assist in the preparation of someone else's tax return." 742 F.3d at 1018.

Because the sole theory alleged in Bowman's complaint—that Defendants deprived him of a property interest in his enrolled-agent status without due process—cannot survive Defendants' Rule 12(b)(6) motion to dismiss, we affirm.

*So ordered.*

TATEL, *Circuit Judge*, with whom *Senior Circuit Judge* GINSBURG joins, concurring: Although our resolution of this case avoids the need to address Bowman's *Bivens* claim, because the issue is fully briefed and one of first impression in this circuit, I write separately to explain why, had Bowman alleged that Defendants barred him from preparing taxes, I would have concluded that he was entitled to pursue his claim against Defendants.

In *Bivens*, the Supreme Court recognized an implied right of action for damages when federal officials violate the Fourth Amendment. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *see Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a *Bivens* remedy for a claim of employment discrimination by a congressman in violation of the Fifth Amendment's Due Process Clause). Since then, the Supreme Court and this circuit have "tread carefully before recognizing *Bivens* causes of actions." *Meshal v. Higgenbotham*, 804 F.3d 417, 421–22 (D.C. Cir. 2015) (collecting cases). In determining whether to do so, courts take a "case-by-case approach" rather than asking "categorically[] whether a *Bivens* action can lie." *Id.* at 422.

This approach involves two steps. First, courts consider whether "'any alternative, existing process for protecting the constitutionally recognized interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Minneci v. Pollard*, 132 S.Ct. 617, 621 (2012) (alteration omitted) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Second, "even in the absence of an alternative, . . . federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed . . . to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Id.* (quoting *Wilkie*, 551 U.S. at 550).

One such special factor—the one at issue here—is the existence of a "comprehensive remedial scheme" representing "an informed congressional judgment . . . sufficient to stay the judiciary's hand." *Davis v. Billington*, 681 F.3d 377, 382–83 (D.C. Cir. 2012). Specifically, the Supreme Court has declined to extend *Bivens* when "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). If a claim falls "within [the] ambit" of a comprehensive remedial scheme, courts defer to Congress's choice "about which remedies should be available," even if Congress has chosen to provide no remedy at all. *Davis*, 681 F.3d at 383.

The district court concluded—and Defendants argue on appeal—that Circular 230 qualifies as a comprehensive remedial scheme that precludes Bowman's *Bivens* remedy. As Defendants point out, Circular 230's disciplinary process includes, "among other procedures, the institution of proceedings (31 C.F.R. § 10.60), service of the complaint (§ 10.63), the filing of an answer (§ 10.64), representation (§ 10.69), conduct of the hearing (§ 10.7[2]), and [the] decision of the Administrative Law Judge (§ 10.76)," followed by "appeal . . . to the Secretary of the Treasury" and "federal court review." Appellee's Br. 29–30. These procedures allow practitioners to "challenge allegations of misconduct." *Id.* at 29.

In support of their argument that this scheme bars Bowman's *Bivens* claim, Defendants cite a series of cases in which we rejected *Bivens* claims in situations where Congress intended to include "a particular claimant—and his underlying claim"—within the ambit of "a given congressional 'comprehensive system.'" *Spagnola v. Mathis*,

859 F.2d 223, 229 (D.C. Cir. 1988) (en banc) (per curiam); *see Davis*, 681 F.3d at 387; *cf. id.* at 383–84 (examining a comprehensive remedial scheme that covers the claimant). For instance, in *Spagnola v. Mathis*, we held that because the plaintiffs' constitutional claims qualified as "prohibited personnel practices" within the meaning of the Civil Service Reform Act (CSRA), and because the actions they challenged were "plainly cognizable" under the Act, their claims fell within the Act's ambit. 859 F.2d at 229 & n.11. In *Wilson v. Libby*, the defendants disclosed information "subject to the Privacy Act's protections," but the Act exempted the defendants from its remedies. 535 F.3d 697, 707 (D.C. Cir. 2008). "Th[e] intentional omission of the [defendants] from the comprehensive coverage of the Privacy Act," we concluded, "require[d] us to deny the additional remedies to the [plaintiffs] which they seek." *Id.* at 708. And in *Davis v. Billington*, we explained that the CSRA precluded a *Bivens* claim brought by a Library of Congress probationary employee because the Act "deliberately included Library of Congress employees in the 'civil service' governed by the CSRA" and "just as deliberately . . . limit[ed] the beneficiaries of the CSRA's remedial protections in large part to non-probationary employees in the executive branch." 681 F.3d at 384. The CSRA, moreover, provided "procedural protections and rights of appeal for the specific underlying actions [the plaintiff] challenge[d]." *Id.* at 387.

This case is very different. In *Loving*, we held that Congress, in enacting the statute under which the Secretary of the Treasury promulgated Circular 230, *see* 31 U.S.C. § 330(a), had no intention of giving the Secretary authority over tax preparers. 742 F.3d at 1022. As we noted, that statute only authorizes the Secretary to "regulate the practice of representatives of persons before the Department of the Treasury." *Id.* at 1015 (quoting 31 U.S.C. § 330(a)(1)). Tax

preparers, we explained, are not "representatives," and tax-return preparation is not "practice . . . before the Department of the Treasury" within the meaning of the statute. 742 F.3d at 1016–21. Accordingly, the IRS lacked statutory authority to discipline tax preparers, including through Circular 230.

Bowman's case is thus not at all like *Spagnola*, *Wilson*, or *Davis.* Unlike the plaintiff's claim in *Spagnola*, Bowman's claim—that is, the claim amicus offers on his behalf—is not "plainly cognizable" under the remedial scheme. Unlike in *Wilson*, where Congress "intentional[ly] omi[tted]" a remedy for the plaintiff, here Congress said nothing at all about a remedy for tax preparers disciplined by IRS officials without due process. And unlike in *Davis*, where the statute provided "procedural protections and rights of appeal for the specific underlying actions" the plaintiff challenged, here the scheme provides no protections at all from Defendants' series of blunders. In light of *Loving*, congressional silence here reveals not only that Congress intended to provide no remedy for the claims of a tax preparer disciplined by IRS officials without due process, but also that it intended to give the IRS no disciplinary authority over the claimant at all. As amicus puts it, Congress "left tax preparers entirely outside the scheme and therefore outside the reach of lawful IRS disciplinary action." Amicus Br. 27.

Instead, this case is like *Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002), in which we permitted a federal employee to pursue a Fourth Amendment *Bivens* claim against her supervisors because a warrantless search—the focus of her claim—"falls outside the condemnation (and, we presume, the approbation) of the" CSRA. *Id.* at 1130. Likewise here. Given our decision in *Loving*, tax preparers' claims of unlawful IRS discipline fall outside the "condemnation" of Circular 230's remedial scheme.

Defendants cite our decision in *Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011), in which we concluded that tax protesters could not bring a *Bivens* action against IRS officials because the Internal Revenue Code offers taxpayers a set of rights and remedies reflecting its "balance between the desire for taxpayer protection and the need for efficient tax administration." *Adams v. Johnson*, 355 F.3d 1179, 1186 (9th Cir. 2004); *see Kim*, 632 F.3d at 717 (citing *Adams*); *see also True the Vote, Inc. v. IRS*, 831 F.3d 551, 556–57 (D.C. Cir. 2016) (precluding a *Bivens* remedy for organizations seeking tax-exempt status in light of the Internal Revenue Code's remedy for challenging rulings on tax exemption). Here, by contrast, under *Loving* the IRS remedial scheme offers tax preparers no rights or remedies at all. Indeed, in the only case Defendants cite where a court held that Circular 230 precluded a *Bivens* remedy, the plaintiff was a practitioner, and practitioners are subject to Circular 230. *Kenney v. United States*, 489 F. App'x 628, 631–32 (3d Cir. 2012). As *Loving* teaches, tax preparers are not practitioners, and Circular 230 has never lawfully governed their relationship with the IRS.

To be sure, tax preparers are subject to other statutory penalties elsewhere in the Internal Revenue Code for certain kinds of misconduct. *See Loving*, 742 F.3d at 1020 (citing 26 U.S.C. §§ 6694, 6695, 6713) ("Over the years, Congress has enacted a number of targeted provisions specific to tax-return preparers, covering precise conduct ranging from a tax-return preparer's failing to sign returns to knowingly understating a taxpayer's liability."). But Defendants never argue that these provisions preclude Bowman's *Bivens* claim. And in any event, scattered statutory penalties for things like failure to sign a tax return, *see* 26 U.S.C. § 6695(b), hardly amount to a comprehensive scheme evincing congressional intent to preclude *Bivens* remedies for other, *ultra vires* IRS actions like the ones at issue here. *Cf. Davis*, 681 F.3d at 385–86

(finding a remedial scheme preclusive after reviewing its "careful categorization of the subsets of civil-service employees eligible for each part of the CSRA's remedial scheme").

Resisting this analysis, Defendants argue that Bowman's claim falls within Circular 230's remedial scheme because he may obtain "limited practice" rights, that is, he may represent "particular persons or entities before the IRS, where such representation reflects well-accepted agent-principal relationships." Amicus Br. 30 (citing 31 C.F.R. § 10.7(c)(1)). But tax preparers have no special limited practice rights. They may engage in limited practice only to the same extent as any other individual—for instance, by representing a member of their immediate family or their employer. 31 C.F.R. §§ 10.7(c)(1)(i)–(ii). The limited practice scheme is too thin a reed to support the conclusion that Congress intended to preclude a *Bivens* remedy in this context.

Finally, Defendants argue that prior to our decision in *Loving*, when Circular 230 covered tax preparers, the remedial scheme "was available to Bowman" and "he availed himself of it" by filing his petition for reinstatement. Appellee's Br. 37. In *Loving*, however, we explained that the IRS's effort to extend Circular 230 to tax preparers was an "expansive, atextual, and ahistorical reading" of the statute. 742 F.3d at 1022. In other words, the statute *never* lawfully covered tax preparers. In any event, the question here is not whether Bowman made an ill-fated attempt to avail himself of the remedial scheme, but rather whether Congress intended that scheme to encompass tax preparers. The answer is no.

To sum up, had Bowman alleged that Defendants disciplined him without authority and barred him from preparing taxes, I would have concluded that Circular 230's

remedial scheme presents no bar to a *Bivens* claim in the narrow and unique circumstances of this case. In reaching this conclusion, I note that Defendants have identified no other reason why this court should refrain from recognizing a *Bivens* remedy here. *Cf. Wilkie*, 551 U.S. at 554–62 (weighing the "reasons for and against the creation of a new cause of action, the way common law judges have always done"). I also acknowledge that this court is reluctant to recognize new *Bivens* claims and does so rarely. But rarely does not mean never. This circuit has recognized *Bivens* claims before, *supra* at 4, as have other circuits, *see e.g.*, *Engel v. Buchan*, 710 F.3d 698, 699 (7th Cir. 2013) (recognizing a *Bivens* claim for *Brady* violations); *Smith v. United States*, 561 F.3d 1090, 1102–03 (10th Cir. 2009) (concluding that the Inmate Accident Compensation Act did not preclude a *Bivens* action "for constitutional harms arising from work-related asbestos exposure"), and we should be prepared to do so again in appropriate circumstances—like those existing here.