Jose GARAVITO, et al.,
Plaintiffs, Appellants,

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,**
Defendant, Appellee.

No. 89–1777.

United States Court of Appeals,
First Circuit.

Heard March 7, 1990.

Decided April 17, 1990.

Patrick D. O'Neill with whom Martinez, Odell, Calabria & Sierra, Hato Rey, P.R., was on brief, for plaintiffs, appellants.

Miguel A. Fernandez, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., and Hans Burgos–

Gandia, were on brief, for defendant, appellee.

Before BREYER, TORRUELLA and SELYA, Circuit Judges.

BREYER, Circuit Judge.

On June 20, 1987, the appellant, José Garavito, a lawyer from Colombia who owns a gasoline service station in San Juan, Puerto Rico, entered the United States with a B–1 visa, a visa that the law makes available to an "alien" who is "visiting the United States temporarily for business." 8 U.S.C. § 1101(a)(15)(B); *see* 22 C.F.R. § 41.12 (providing for classification symbols). He subsequently asked the Immigration and Naturalization Service ("INS") to change his visa "classification" to category E–2, a classification available to an "alien," as well as to his "spouse and children," provided he comes from a country with an appropriate treaty and he comes here

> solely to develop and direct the operations of an enterprise in which he has invested ... a substantial amount of capital.

8 U.S.C. § 1101(a)(15)(E)(ii). *See also* 8 U.S.C. § 1258 ("The Attorney General may ... authorize a change from any nonimmigrant classification to any other nonimmigrant classification...."); 8 C.F.R. § 248.1 (providing for changes between nonimmigrant classifications). The INS denied the request for the change in classification. The appellant claims that the denial is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," and therefore unlawful under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

While we recognize that the INS has broad discretionary authority to decide when, or whether, a change in visa classification is proper, *see, e.g., Patel v. INS,* 738 F.2d 239, 242 (7th Cir.1984); *Wing Ding Chan v. INS,* 631 F.2d 978, 980–81 (D.C. Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1371, 67 L.Ed.2d 349 (1981), we believe that, in this instance, its determination is indeed an "abuse of discretion." That is because one important reason the INS gave for denying the visa change rests

upon an obviously false factual premise, namely that the appellant, in 1987, obtained a visa to visit the United States "for pleasure," rather than the "for business" visa that he actually obtained. In the circumstances of this case, that factual mistake is not simply harmless; rather, it could well determine the outcome.

The key background facts are the following:

1. The appellant, as we have said, is a citizen of Colombia, a nation that has a treaty with the United States entitling its citizens to enter the United States for commercial purposes. He is an attorney; he has a wife and two children; he owns an apartment and an office suite in Colombia.

2. In 1983 the appellant came to Puerto Rico to visit his brother, an American citizen. The appellant went to the INS offices, where the INS explained how he could stay in the United States, as a commercial investor, if he invested a "substantial amount of capital."

3. The appellant organized an investment corporation, acquired a gasoline service station, and invested $80,000 in the enterprise. In October 1983 the INS consequently changed his visa classification to "E" (but, by mistake, gave him a one year "E–1" foreign trade visa, instead of the proper "E–2" investor visa).

4. In June 1984 the appellant, who was in Curacao at the time, went to the American consulate to obtain an "E" visa, permitting him to reenter the United States. The consulate told him it could not give him the visa because he did not have with him the papers that showed he had invested $80,000 in an American commercial enterprise. Appellant then flew to San Juan and asked the immigration officers at the airport for an "E" visa. They admitted him provisionally, and in December the INS approved a "waiver," thereby permitting the appellant to remain in the United States with an "E–2" visa

classification. The INS also permitted his wife and his children to come to San Juan with the same visa classification. The visa was valid until the end of 1986.

5. Between 1985 and 1987 the appellant's business in San Juan employed five to six persons. It took in revenues of $700,000 to $1 million annually.

6. In December 1986, the appellant left the United States, and returned in June 1987. He obtained a "B–1," "visiting ... for business" visa. In September he again applied to change the classification to "E–2" investor. This time, however, the INS denied his request; and it denied reconsideration of that denial.

In determining the significance of these background facts, we have examined the reasons the INS gave for denying the change of visa status. It gave four reasons for its initial denial. First, it said that the appellant had "been working without authorization from this Service." Second, it said that he had to show that he had not invested "in a marginal enterprise, solely for the purpose of earning a living," and he had not made this showing. Third, it said that he had not shown his investment was "substantial," and of an amount sufficient to permit him to function as an investor and not "simply as a skilled or unskilled worker." Fourth, it said that when he entered the United States in June, he had not done so as "a bona fide nonimmigrant visitor *for pleasure*" (emphasis added), and he had therefore used his *"tourist"* visa as a "bridge" to enter without going to the American Embassy to get his visa. The INS seemed to find this last reason particularly important, for it quoted language from an administrative decision saying that the "B–2, visitor *for pleasure,* nonimmigrant category is not a 'catch all classification available to all who wish to come to the United States for whatever purposes....'" (Emphasis added.) Immediately thereafter, the appellant submitted a request for reconsideration, accompanied by massive documentation of the scope and legitimacy of his business, and an explana-tion of why he did not go to the American Embassy in Colombia for the visa, namely that he had the relevant documentation in San Juan and thought it was easier to request a change of status there. The INS, while conceding that the documenta-tion "might have overcome the issue of marginality and substantiality of invest-ment," denied reconsideration.

We believe the INS must reconsider appellant's visa application because its denial of the application rests upon a mistake of fact. The INS opinion rests in significant part upon its belief that appellant entered the United States in 1987 using, not a "business" visa, but a "pleasure" visa. The INS in effect concedes the mistake. The only possible question is whether the mistake is significant—whether it is likely to have affected the outcome. In our view, the mistake is important enough to warrant a fuller reconsideration than the INS has given, for the following reasons:

First, the mistake is important in respect to the work-related reason that the INS provided for the denial. The only evidence in the record that the appellant improperly engaged in work consists of a four-sen-tence "special agent" report. According to the report, on January 8, 1988, two special agents went to appellant's service station and saw him "taking a client out to his car." The agents "oriented" the appellant about the 1986 immigration law, and "no-ticed during the orientation that [he] was answering the telephone and giving other employees instructions on what to do."

Given the fact that INS regulations say that "a temporary visitor *for pleasure* ... may not engage in any employment," 8 C.F.R. § 214.1(e), one can understand how the INS might have concluded that appel-lant violated the law on the false assump-tion that he was a *pleasure* visitor. The INS nowhere explains, however, what law would prevent a *business* visitor from mak-ing phone calls, giving employees instruc-tions, or taking clients to their cars. In-deed, were the INS regulations to make such activity unlawful, it is difficult to see how foreign businessmen could conduct business within the United States, and it is

equally difficult to see how any such regulation could fall within the lawful scope of the relevant statute. *See* 8 U.S.C. § 1101(a)(15)(B). Although appellant might not "qualify as a business visitor if his business activities almost exclusively involved the fulltime management of a United States enterprise," *In re Lawrence*, 15 I. & N.Dec. 418, 420 (1975); *see Pereira–Diaz v. INS*, 551 F.2d 1149, 1152–53 (9th Cir.1977), nothing in the record shows that this was the case.

Second, the investment-related reasons are not adequately supported. Nothing in the record suggests that the INS, on reconsideration, would find plaintiff's investments "marginal" or "insubstantial." The INS seemed to concede this fact in its reconsideration denial.

Third, to correct the description of appellant's October 1987 visa also helps overcome the implication (present in the INS's explanation of why it denied the change) that appellant somehow acted dishonestly or improperly or surreptitiously when he entered the United States in October 1987. The record evidence in this respect, even if we read it in the INS's favor, tends to favor the appellant. For one thing, the correct description of appellant's October 1987 visa—the "for business" description— is also a correct description of why appellant wanted the visa; he did intend to enter the United States at that time, not "for pleasure," but "for business." We know of nothing that suggests the "B–1" (business) and "E–2" (investor) visa qualifications are somehow mutually exclusive— that a foreign visitor could not be eligible for both. For another thing, appellant, in entering the United States on a B–1 visa and applying for an E–2 change, was following the same procedure he followed before, a procedure that (as far as the record indicates) no one ever told him was improper. Moreover, nothing in the record suggests he was trying to avoid some special requirement that he appear at the American Embassy in Colombia. Indeed, neither the record nor the briefs suggest that there is any such special requirement. The only rule the government cites to that effect is a rule that says "every alien applying for a regular ... visa" shall apply at the consulate in the district where he resides, *see* 22 C.F.R. § 41.101, a rule that, by its terms, applies to *all* visas—tourist, business, pleasure, investor, trader—alike, and a rule that appellant (apparently like millions of businessmen) violated no more in respect to his E–2 visa than in respect to the B–1 visa which he obtained and for which the record suggests he was qualified. Nor does the record support the United States Attorney's contention that appellant misrepresented a material fact in his change-of-status application when he stated that he had never applied for an immigrant visa. As far as we can tell, appellant never has applied for such a visa. Appellant's brother did file an immigrant visa petition on appellant's behalf, but appellant clearly reports this fact on the change-of-status application.

On the other hand, the record does contain one potentially misleading statement that appellant made on his application for change of status. Under the heading "I did not apply to the American Consul for a visa in the nonimmigrant classification to which I wish to be changed," appellant wrote:

> I was unaware that I might qualify for E–2 status. Furthermore, I do not have with me all the documents necessary to establish my eligibility for E–2 status.

The United States Attorney argues that the *first* sentence is literally false, and shows an intent to mislead. Even though the first sentence looks more innocent in context (particularly against the background of the Curacao consulate's previous denial of an E–2 visa for lack of documentation, the very reason appellant cites), we are not now prepared to hold that the INS could not read the first sentence as reflecting an effort to mislead.

Nonetheless, the record suggests that the United States Attorney seems to have first raised this point in court. The INS, in its administrative proceedings, seems to have been more concerned with appellant's having misled immigration officials by stating he wanted to enter the United States "for pleasure"—a concern that a proper

reading of the record removes. Given this state of the record, it would seem important that the INS have an opportunity to reconsider the matter under, and to provide an explanation that reflects, correct factual assumptions.

Finally, we note that the United States Attorney, in court (but not the INS in the administrative proceedings), points out that the appellant's brother has petitioned for an immigrant visa for appellant, that the petition has been approved, and that appellant could return to Colombia, wait about a year for his priority date to be reached, and then obtain the immigrant visa and return to the United States. We do not see how this fact helps the government, however. The United States Attorney points to no legal rule that requires the appellant to follow this course of action. (The mere fact that appellant is the beneficiary of a petition for an immigrant visa, for example, does not render his nonimmigrant visa invalid. *See, e.g., Brownell v. Carija*, 254 F.2d 78, 80 (D.C.Cir.1957) (intent to remain permanently in the United States if one can do so lawfully is not inconsistent with the intent, necessary for obtaining a nonimmigrant visa, to remain only temporarily); *In re Chartier*, 16 I. & N.Dec. 284 (1977) (same).) Moreover, insofar as the INS, in deciding whether to exercise statutory discretion, looks to the "equities" or the "common sense" of a particular case, this fact would seem to argue in favor of permitting the appellant to stay. After all, it would seem sensible to permit a legitimate investor, with a family in San Juan, apparently meeting all the substantive requirements for an investor's visa, to remain in San Juan for a few months with that visa until he qualifies for the immigrant visa to which he is also entitled; and it would seem inhumane (unless there is more to the matter than currently appears) to force him to remove his children from school, and return with his family to Colombia for a few months, moving back to San Juan thereafter. What reason is there to think that the INS, given the choice, would follow other than the more humane, more sensible course of action?

For these reasons, we conclude that the INS's failure to reconsider the appellant's application under a correct set of factual assumptions amounts to an "abuse of discretion." We vacate the judgment of the district court and order it to remand this case to the INS for reconsideration.

*So ordered.*